# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 14-414V
### (To be Published)

* * * * * * * * * * * * * * * * * * * * * * * * *

IVANKA PENTCHOLOV *as mother and*    *
*natural guardian of minor*, A.P.,     *
            *   Special Master Corcoran
    Petitioner,       *
            *   Dated: April 29, 2016
    v.         *
            *   Attorney's Fees and Costs;
            *   Forum Rate; Reasonable Hourly
SECRETARY OF HEALTH AND    *   Rate; Excessive Billing.
HUMAN SERVICES,       *
            *
    Respondent.      *
            *

* * * * * * * * * * * * * * * * * * * * * * * * *

*Jeffrey S. Pop*, Jeffrey S. Pop, Attorney at Law, Beverly Hills, CA, for Petitioner.

*Darryl R. Wishard*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### ATTORNEY'S FEES AND COSTS DECISION[1]

    On May 14, 2014, Ivanka Pentcholov filed a petition as mother and natural guardian of minor, A.P., seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] Ms. Pentcholov alleged that A.P. developed aplastic anemia as a result of her receipt of the tetanus-diphtheria-acellular pertussis ("TDaP") and meningococcal vaccinations she received on August 20, 2012. Pet. at 1 (ECF No. 1). The case was settled nearly two years later, and I issued a decision awarding Petitioner compensation on March 4, 2016. ECF No. 38.

---

[1] Because this decision contains a reasoned explanation for my actions in this case, I will post it on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act.

Petitioner now requests $133,356.28 in attorney's fees and costs. As discussed below, I hereby grant in part and deny in part Petitioner's fees request, awarding attorney's fees and costs in the total sum of **$113,210.53.**

## I.    PROCEDURAL HISTORY

The billing records submitted with Petitioner's Motion shed light on her counsel's actions during the procedural history of this matter. Ms. Pentcholov retained Mr. Jeffrey Pop as counsel in March of 2013 – fourteen months prior to the date she filed her petition. Mot. for Attorney Fees [hereinafter "Mot."], Ex. 1 (ECF No. 42-2). During that time, Mr. Pop billed approximately 7.5 hours, the majority of which was spent meeting with Petitioner, reviewing the case, petition, and Petitioner's declaration, and consulting with Dr. Lawrence Steinman and Dr. Calvin Kuo as potential experts. *Id*. at 3-5. Mr. Pop's associate, Ms. Kristina E. Grigorian, spent little time on the case at this stage as well, expending only .2 hours to correspond with Dr. Kuo regarding A.P.'s medical records. *Id*.

By contrast, the majority of the work conducted during this pre-filing time frame was completed by Mr. Pop's various paralegals. Thus, Mr. Thomas Hahn took the lead in the case, expending nearly forty hours during this time on tasks such as reviewing medical records, contacting potential experts, drafting Petitioner's declaration, and drafting and filing the petition. Mot., Ex. 1 at 3-5. Other paralegals spent approximately 6.5 hours on the case on tasks such as requesting medical records and researching aplastic anemia. *Id*.

Within a month of the case's initiation, Petitioner had filed medical records, expert reports from Drs. Kuo and Steinman, and a statement of completion. ECF No. 9. Respondent subsequently filed a Rule 4(c) report on September 12, 2014 (ECF No. 11) along with an expert report of her own (ECF Nos. 12-14), asserting that Ms. Pentcholov's claim was not appropriate for compensation. Respondent identified certain missing medical records at that time, which Petitioner filed on November 26, 2014, along with a supplemental declaration from Petitioner and a supplemental expert report from Dr. Kuo. Pet'r's Exs. 32-44. Petitioner also filed an expert report from Dr. Hermes Garbán, with accompanying medical literature, on December 18, 2014. Pet'r's Exs. 45-49.

Soon thereafter, the Parties indicated their desire to engage in settlement discussions in light of Petitioner's supplemental expert reports. ECF No. 20. I instructed the Parties to file a status report by January 30, 2015, reporting on the progress of their settlement discussions. *Id*. The Parties twice requested extensions of time to complete settlement discussions. ECF Nos. 23, 24. On April 10, 2015, however, Respondent again took the position that this case was not appropriate for settlement, and requested the opportunity to file a supplemental expert report from her expert, which I granted. ECF No. 25. On May 29, 2015, Respondent filed the supplemental expert report and relevant medical literature. ECF No. 26. In response, Petitioner filed another supplemental

report on July 17, 2015, this time from Dr. Steinman. Pet'r's Ex. 51.

With both Parties satisfied that they had filed all the necessary expert reports, a hearing was set for March 2016, in Seattle, Washington. ECF No. 31. On December 30, 2015, Petitioner filed a declaration from Dr. Rebecca Gardner, one of A.P.'s treating physicians. ECF No. 33-1. The hearing never took place, however, because on January 6, 2016, the Parties contacted my chambers to indicate that they had reached a tentative settlement and requested at 15-week order, which I subsequently granted. ECF No. 34. The Parties reached settlement on March 4, 2016, and I entered a decision. ECF No. 38. From the time of its filing, this case moved very quickly, and there is no evidence of delay on the part of Petitioner based on my review of the docket and the billing records.

## II.     FEES PETITION

Ms. Pentcholov filed the present motion for reimbursement of attorney's fees and costs on March 15, 2016. *See generally* Mot. In it, she requests compensation in the amount of $133,356.28 for her attorney's fees and costs incurred in proceeding with her claim. In accordance with General Order No. 9, Petitioner's counsel represents that Petitioner incurred no out-of-pocket expenses. ECF No. 42-7. Petitioner has offered her counsel's billing record, an affidavit from Mr. Pop, and statements of costs incurred by Petitioner's counsel and each of her three experts in support of the Motion. *See generally* ECF No. 42. She requests $25,405.00 in attorneys' fees; $19,147.50 in paralegals' costs; and $88,803.78 in litigation costs (almost all of which are expert costs).

On March 22, 2016, Respondent filed a brief in reaction to Petitioner's Motion. ECF No. 43. Respondent asserts that "[n]either the Vaccine Act nor Vaccine Rule 13 contemplates any role for Respondent in the resolution of a request by a Petitioner for an award of attorney's fees and costs." *Id*. at 2. Respondent added that she "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." *Id*. at 2. However, she maintained that a reasonable amount for fees and costs in the present case would fall between $55,000 and $74,000, providing no substantiation for this proposed range (and thus suggesting Petitioner's case cost almost twice what it should have). *Id*. at 3.

Petitioner filed a Reply on March 31, 2016, contesting the generic "bracketing" for fees suggested by Respondent. ECF No. 45 ("Reply") at 1. Petitioner asserts that given the rarity of aplastic anemia and its infrequent occurrence in the Vaccine Program, prosecution of the case took a considerable amount of time and effort. *Id*. at 2. Petitioner also spent time justifying the high expert costs incurred in this case. *Id*. at 3-5. Petitioner included as exhibits to this Reply pictures of A.P., as well as an affidavit from Dr. Kuo in support of his request for $56,406.25 in reimbursement (the largest component of the requested fees and costs total). Reply, Exs. 1-3. In Dr. Kuo's declaration, he references the mathematical model and research used to opine on his causation theory, as well as his extensive review and submission of medical literature. Reply, Ex.

3 at 3-4. He also referred to the time he spent reviewing Respondent's expert reports and conferring with Dr. Steinman. *Id.* at 4-6. Ms. Pentcholov's application for attorney's fees and costs is now ready for adjudication.

## III.   ANALYSIS

### A.   General Principles Regarding Attorney's Fees and Costs Awards

Vaccine Program petitioners who receive compensation for their injuries are by statute entitled to an award of attorney's fees and costs. However, such fees and costs must be "reasonable." Section 15(e)(1). It is for the special master to evaluate and decide whether this is the case. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). To this end, special masters have discretion in determining what a reasonable fees award is, and may reduce hours *sua sponte*, apart from objections raised by Respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208-09 (2009); *Perreira*, 27 Fed. Cl. at 34 (special master has "wide discretion in determining the reasonableness" of attorney's fees and costs).

The special master is not obligated to evaluate a fees request on a line-by-line basis. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521-22 (Fed. Cir. 1993) (approving the special master's elimination of 50 percent of the hours claimed); *see also Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728–29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction in the number of hours from 515.3 hours to 240 hours); *Edgar v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 506 (1994) (affirming the special master's awarding only fifty-eight per cent of the numbers of hours for which compensation was sought). Rather (as the United States Supreme Court instructs) when awarding attorney's fees special masters may use estimates to achieve "rough justice." *Fox v. Vice*, 131 S.Ct. 2205, 2216 (2011).

Determining the appropriate amount of a fees award is a two-part process. The first part involves application of the lodestar method – "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down. *Avera*, 515 F.3d at 1348. This standard for calculating a fee award is considered applicable in most cases where a fees award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429-37 (1983).

An attorney's reasonable hourly rate is more precisely understood to be the "prevailing market rate" in the relevant forum. *Avera*, 515 F.3d at 1349; *Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468, at *2 (Fed. Cl. Spec. Mstr. July 27, 2009), *mot. for rev. den'd*, 91 Fed. Cl. 453 (2010), *aff'd*, 632 F.3d 1381 (Fed. Cir. 2011). That rate is in turn determined

by the "forum rule," which bases the award rate on rates paid to similarly qualified attorneys in the forum in which the relevant court sits (Washington, DC for Vaccine Act cases). *Avera*, 515 F.3d at 1348.[3] After the hourly rate is determined, the reasonableness of the total hours expended must be considered. *Sabella*, 86 Fed. Cl. at 205-06. This inquiry mandates consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley*, 461 U.S. at 434, 437.

Evaluating an attorney's fees application involves more than the mere performance of a mathematical calculation. In all stages of the lodestar calculation, I must determine if the fees applicant has established the reasonableness of the billing rate and work performed. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986) ("[i]t remains counsel's burden to prove and establish the reasonableness of each dollar, each hour, above zero.").[4] Quoting a decision by the United States Supreme Court, the Federal Circuit has characterized the contours of a reasonable fee request:

> The [trial forum] also should exclude from this initial fee calculation hours that were not "reasonably expended." . . . Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."

*Saxton*, 3 F.3d at 1521 (quoting *Hensley*, 461 U.S. at 433-34).

Petitioners bear the same reasonableness burden in seeking an award of costs. *Perreira*, 27 Fed. Cl. at 34; *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002). When petitioners fail to carry this burden, such as by not providing appropriate documentation to substantiate a requested cost, special masters have refrained from awarding compensation. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Human Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005). This practice is consistent with how the Federal Circuit and the Court of Federal Claims (the courts responsible for reviewing the decisions of special masters) have interpreted other federal fee-shifting statutes. *See Naporano Iron & Metal Co. v. United States*, 825 F.2d 403, 404 (Fed. Cir. 1987) (interpreting the Equal Access to Justice Act); *Presault*, 52 Fed. Cl. at 679

---

[3] There is also the *Davis* exception to the forum rule, which applies if the bulk of the attorney's work was performed outside of Washington, DC, in a location where prevailing rates are substantially lower than the forum rate. *Avera*, 515 F.3d at 1349. In such cases, the local rate is applied.

[4] Although *Mares* did not interpret the Vaccine Act's fees provisions, other fee-shifting statutes are interpreted similarly. *Avera*, 515 F.3d at 1348.

(interpreting the Uniform Relocation Assistance and Land Acquisition Policies Act of 1970).

### B.   Specific Issues Raised by Petitioner's Fees Application

#### 1.   Attorneys' Hourly Rates

Petitioner requests that Mr. Pop receive an hourly rate of $400/hour. Mot., Ex. 1 at 2 (ECF No. 42-1). Mr. Pop has been licensed to practice law for well over forty years, and has been practicing before the U.S. Federal Court of Claims since 2005. *Id*. at 2-3. A recent Vaccine Program decision, *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015) set the appropriate hourly rate for in-forum attorneys with twenty or more years of legal experience as $350 to $425/hour. *McCulloch* at *19. That decision was especially persuasive, and I therefore apply it to the present case (which invokes a forum rate question). *See, e.g.*, *Carcamo v. Sec'y of Health & Human Servs.*, No. 07-483V, 2011 WL 24113345, at *3 (Fed. Cl. Spec. Mstr. May 20, 2011) (holding that the forum rate applies to the Los Angeles metropolitan area). Mr. Pop's forty years of experience clearly places him in this range. Therefore, I find the requested $400/hour reasonable.

Petitioner also requests that Ms. Grigorian receives $250/hour. Ms. Grigorian was admitted to practice law in 2012, so at the outset of this case's life, she had approximately two years of post-licensure experience. Mot., Ex. 1 at 4. However, Ms. Grigorian has actually been employed at Mr. Pop's firm since April of 2008, when she worked 30-40 hours per week while attending the evening division at Loyola Law School. *Id*. at 4-5. She therefore had considerable Vaccine Program experience before the case was ever filed.

*McCulloch* set the range for attorneys with less than four years of experience at $150 to $225/hour. *McCulloch* at *19. However, the special master in *McCulloch* clearly stated that in this category in particular, "prior clerkships or legal intern work during law school in the Vaccine Program may be considered." *Id*. I find that Ms. Grigorian's Vaccine Program experience merits a somewhat higher rate than the $225/hour top line rate. Therefore, I find that a rate of $235/hour is appropriate for Ms. Grigorian.

#### 2.   Attorney Hours

This case moved quickly due to the efforts of Petitioner's counsel. For example, within a month of filing, most medical records and two expert reports were filed in support of Petitioner's claim. Furthermore, upon reviewing the billing records, there are no instances of obvious delay or excessive billing. I have reviewed the billing records submitted with Petitioner's motion for fees and, based on my discretion and Vaccine Program experience, find no cause to reduce the requested hours as they appear to be reasonable. *Saxton*, 3 F.3d at 1521. As a result, I award a total of $25,169.50 in attorney's fees for work completed by Mr. Pop and Ms. Grigorian.

3. Expert Costs

The next issue presented by Petitioner's fees request is the reasonableness of expert fees incurred by Dr. Kuo, Dr. Steinman, and Dr. Garbán. Again, it is necessary to evaluate the reasonableness of their rates in connection the hours expended.

a. *Dr. Kuo's Fees*

Dr. Kuo, a hematologist, is requesting $56,406.25 for 118.75 hours at $475/hour. Mot., Ex. 4 at 4. The product of his time is his February 9, 2014 twelve-page expert report, which opined that A.P. suffered aplastic anemia as a result of her receipt of the TDaP and meningococcal vaccinations. *See generally* Pet'r's Ex. 8. Dr. Kuo also submitted a supplemental ten-page expert report on November 25, 2014, in response to the opinions of Respondent's two experts. *See generally* Pet'r's Ex. 65. After this time, additional reports were filed from Dr. Steinman, Dr. Garbán, and Dr. Rebecca Gardner (one of A.P.'s treating physicians) before the case settled a year and a half later.

Experts' hours are often reduced for being excessive. *See, e.g.*, *Barclay v. Sec'y of Health & Human Servs.*, No. 07-605V, 2014 WL 2925245 (Fed. Cl. Spec. Mstr. Feb. 7, 2014) (reducing a non-testifying expert's hours from 81.3 to 65 hours due to vagueness in the invoice). While Dr. Kuo's two expert reports were undoubtedly helpful in the advancement of this case, a comparison to the hours billed by Dr. Steinman, who similarly submitted two expert reports in this case, is telling. Dr. Steinman requests $14,875 for 29.75 hours at $500/hour for the production of his two expert reports. Mot., Ex. 5. Petitioner provided an affidavit from Dr. Kuo to explain the time devoted to the matter, but the declaration is not persuasive as to why Dr. Kuo expended approximately four times as many hours as Dr. Steinman in the completion of his expert reports. The reasons stated by Dr. Kuo in his declaration are equally applicable to Dr. Steinman – for example, Dr. Steinman similarly would have incurred time in conferring with Dr. Kuo, and he certainly did incur time in responding to Respondent's expert report. Yet Dr. Steinman still only billed a fourth of the time billed by Dr. Kuo.

Furthermore, a review of the invoice indicates Dr. Kuo also billed for tasks such as creating a summary of the medical records "for Pop Law" and for updating his own curriculum vitae. Mot., Ex. 5 at 3-4. Creating a medical record summary is often the task of paralegals at the law firm, and is therefore not appropriately outsourced to experts who bill significantly higher rates. *Broekelschen v. Sec'y of Health & Human Servs.*, No. 07-137V, 2008 WL 5456319, at *7 (Fed. Cl. Spec. Mstr. Dec. 17, 2008) (reducing petitioner's fees request because a paralegal could have summarized the medical records instead of the attorney). In addition, updating one's curriculum vitae is not work specific to this case, and would not appropriately be billed to a client. *Saxton*, 3 F.3d at 1521.

Based on my experience in reviewing other Vaccine Program cases (*Saxton*, 3 F.3d at 1521), I find that the 118.75 hours is excessive, especially given that Dr. Kuo did not even testify at a hearing. In my discretion, I find that a thirty percent reduction in time is warranted. Eighty-three hours should have been more than adequate for Dr. Kuo to analyze the case and prepare two expert reports. However, I find that Dr. Kuo's requested rate of $475/hour is reasonable. Thus, I reduce his fees by $16,979.25, to $37,427.00.

### b.  *Dr. Steinman's Fees*

I find Dr. Steinman's reimbursement request to be reasonable. Dr. Steinman requests $14,875.00 for 29.75 hours at $500/hour for the production of his two expert reports. Mot., Ex. 5. Dr. Steinman has previously been awarded $500/hour for his work, and I see no reason to reduce his rate at this time. *Brown v. Sec'y of Health & Human Servs.*, No. 09-426V, 2012 WL 952268 (Fed. Cl. Spec. Mstr. Feb. 29, 2012). Furthermore, as discussed above, expending 29.75 hours for two expert reports is reasonable. Therefore, I grant Dr. Steinman's request.

### c.  *Dr. Garbán's Fees*

I also find Dr. Garbán's request to be reasonable. Dr. Garbán requests reimbursement of $10,600 for 27 hours of time (approximately $393/hour). Mot., Ex. 6. I find that Dr. Garbán's requested rate is reasonable based on his extensive training in microbiology, immunology and molecular genetics, and the necessity of his expert report in responding to Respondent's expert's alternative cause argument and the ultimate settlement of this case as evidenced by the report's temporal proximity to settlement. *See generally* Pet'r's Exs. 45, 50. In addition, given the lower hourly rate requested, I do not find the overall amount requested to be excessive. Therefore, I grant Dr. Garbán's request as well.

### 4.    Paralegal Costs

Mr. Pop employed various paralegals to assist in this case. Petitioner requests $175/hour for the services of Mr. Thomas Hahn. Mot., Ex. 1 at 5. Mr. Hahn, a former attorney, is now a senior paralegal at Mr. Pop's firm. *Id.* According to Mr. Pop, Mr. Hahn practiced law for thirty years, before resigning from the State Bar of California. *Id.* Ever since that time, he has worked as his "senior paralegal and advisor." *Id.*

While Mr. Hahn's previous experience as an attorney may assist him in the completion of exceptional work, and may be a reason why Mr. Pop puts great value in his input, *McCulloch* does not provide for a distinction based on experience for non-attorneys. Under *McCulloch*, paralegals are entitled to no more than $135/hour. *McCulloch* at *21. Given his experience as an attorney and legal education, however, I am willing to adjust upwards slightly from the rate set by *McCulloch*. Therefore, I award Mr. Hahn $145/hour.

Finally, Petitioner requests $125/hour as compensation for the work completed by paralegals Amy Wong, Shanine Jaimes-Morelos, and Mary-Kate Planchet. Mot., Ex. 1 at 6. As discussed above, under *McCulloch* paralegals are entitled to $135/hour. *Id.* As a result, I find that the $125/hour requested for work completed by Ms. Wong, Ms. Jaimes-Morelos, and Ms. Planchet is reasonable.

**CONCLUSION**

Based upon the above, and in the exercise of my discretion, I hereby award attorney's fees as follows: $21,480.00 for Mr. Pop ($400/hour for 53.7 hours); $3,689.50 for Ms. Grigorian ($235/hour for 15.7 hours); $14,166.50 for Mr. Hahn ($145/hour for 97.7 hours); and $2,050.00 for the paralegals ($125/hour for 16.4 hours). In total, this leads to a reduction of $3,166.50 for attorney's fees in this case. I also reduce Dr. Kuo's fees by thirty percent or $16,979.25, but grant Dr. Steinman and Dr. Garbán's fees in their entirety.

The following chart sets forth the total calculation of Petitioner's fee award:

| Contested Sum | Amount Requested | Reduction | Total Awarded |
|---|---|---|---|
| Mr. Pop's Fees | $21,480.00 | N/A | $21,480.00 |
| Ms. Grigorian's Fees | $3,925.00 | $235.50 | $3,689.50 |
| Mr. Hahn's Fees | $17,097.50 | $2,931.00 | $14,166.50 |
| Paralegal Fees | $2,050.00 | N/A | $2,050.00 |
| Dr. Kuo's Fees | $54,406.25 | $16,979.25 | $37,427.00[5] |
| Dr. Steinman's Fees | $12,375.00 | N/A | $12,375.00[6] |
| Dr. Garbán's Fees | $10,600.00 | N/A | $10,600.00 |
| Other Costs | $11,422.53 | N/A | $11,422.53[7] |

I reduce Petitioner's fee application by the amount of $20,145.75 as a result of the reduction in rate and number of hours, thereby awarding Petitioner a total of $113,210.53. Accordingly, an award shall be made in the form of a check jointly payable to Petitioner and her counsel, Jeffrey Pop, Esq., in the amount of **$113,210.53.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[8]

---

[5] This amount excludes the $2,000.00 paid in advance to Dr. Kuo, which is included in "Other Costs."

[6] This amount excludes the $2,500.00 paid in advance to Dr. Steinman, which is included in "Other Costs."

[7] Respondent has not objected to these costs, and because I find them reasonable I hereby include them in the award without adjustment.

[8] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Special Master